UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELEANOR BALLESTER,<br><br>                              Plaintiff,<br><br>v.<br><br>LEAH BOUCEK, et al,<br><br>                              Defendants. | Case Nos.:  3:23-cv-1730-RBM-VET;<br>3:23-cv-01839-RBM-VET<br><br>**ORDER DISMISSING CASES<br>WITHOUT LEAVE TO AMEND**<br><br>**[Case No. 3:23-cv-1730-RBM-VET<br>Docs. 3, 17, 18, 19, 21, 22, 26, 34, 36,<br>41, 42, 43, 45, 48, 49, 50, 51, 54]<br>[Case No. 3:23-cv-1839-RBM-VET<br>Docs. 3, 4, 14, 17, 22, 23, 24, 27–28]** |

        On September 19, 2023, Plaintiff Eleanor Ballester, proceeding pro se,[1] filed a Complaint in Case No. 3:23-cv-01730-RBM-VET (hereinafter, "1730 Complaint") under 28 U.S.C. § 1983 alleging a violation of her rights under the Fourteenth Amendment.

_____

[1] The Court notes that while Plaintiff is proceeding pro se, she is not proceeding *in forma pauperis*.

1

(1730 Case-Doc. 1.[2])  This action names twelve Defendants that each allegedly have some association with Plaintiff's state court family law case, San Diego County Superior Court Case 21FL009971C (hereinafter, the ("family law case") wherein Plaintiff seeks to void a Domestic Violence Restraining Order ("DVRO") issued against her.[3]  (1730 Compl. at 1–6, 100–105, 112-113.[4])

On October 5, 2023, Plaintiff filed another § 1983 Complaint in Case No. 3:23-cv-1839-RBM-VET (1839 Case-Doc. 1) with an application to set aside a state judgment (1839 Case-Doc. 3).  Plaintiff's allegations in the 1839 Complaint are based on the same family law case (1839 Compl. at 12, 14, 29, 50–51, 61), name six of the same Defendants as in the 1730 Complaint (1839 Complaint at 4–5) and also seeks to enjoin the DVRO as an allegedly "illegal restraining order" (*id.* at 57).  Additionally, Plaintiff's application to set aside a state judgment, filed in conjunction with the 1839 Complaint, seeks to void the same DVRO Plaintiff seeks to enjoin in the 1730 Complaint.  (1839 Case-Doc. 3.)

Because these cases are based on Plaintiff's challenge to the same family law case in state court, name six of the same Defendants, and the same state court DVRO, the Court addresses the pending motions in both cases in one order.  Between the two cases, there are more than twenty motions and five separately filed requests for judicial notice before the Court.[5]  (1730 Case-Docs. 3, 17–19, 21–22, 26, 34, 41–42, 48, 49, 50, 51, 54 (motions);

---

[2] When citing documents filed in either case, the Court will include "1730 Case" or "1839 Case" before citing the specific document number.  Similarly, when referring to the two complaints, the Court refers to them as either the "1730 Complaint" or the "1839 Complaint" or collectively "the Complaints."

[3] This is the first of five civil cases brought under § 1983 that Plaintiff has filed in this Court that are associated with the same family law case.  (*See also* Case Nos. 3:23-cv-1839-RBM-VET,  3:23-cv-1854-RBM-VET,  3:24-cv-0454-RBM-VET,  3:24-cv-2244-RBM-VET).  This Order addresses pending motions filed in two of the cases.  The Court notes that Plaintiff also unsuccessfully attempted to remove the family law case to federal court multiple times.

[4] The Court cites the CM/ECF electronic pagination unless otherwise noted.

[5] Numerous motions also include requests for judicial notice.

1730 Case-Docs. 36, 43, 45 (requests for judicial notice); 1839 Case-Docs. 3, 4, 14, 17, 22–24 (motions); 1839 Case-Docs. 27–28 (requests for judicial notice).)   As detailed below, Defendants' motions to dismiss in the 1730 Case seek to dismiss the 1730 Complaint and to strike Plaintiff's filing titled "2nd Amended Complaint" (1730 Case-Doc. 47) ("2nd Amended Complaint").  (1730 Case-Docs. 17, 18, 19, 21–22, 34 41–42 (motions to dismiss); 1730 Case-Docs. 48, 49, 50, 51, 54 (motions to strike 2nd Amended Complaint).)  Similarly, the Defendants move to dismiss the 1839 Complaint.  (1839 Case-Docs. 14, 17, 22–24.)  Plaintiff has not filed any response or opposition to any of the motions or requests for judicial notice in either case.

For the reasons set forth below, the motions seeking to strike the 2nd Amended Complaint in the 1730 Case are **GRANTED.**  The motions to dismiss in the 1730 Case and 1839 Case are **GRANTED** as set forth below and both cases are **DISMISSED WITHOUT LEAVE TO AMEND**.

## I.    BACKGROUND

### A.    Complaints

The Court briefly summarizes the allegations of the 1730 and 1839 Complaints.  The Court has considered the entirety of both Complaints but has not included every allegation in this summary.   Both Complaints contain many paragraphs of allegations that are repeated as to numerous Defendants without any factual distinctions between them.  Those repeated paragraphs also tend to be legal conclusions.  The Court's summary of the allegations attempts to identify the factual basis for Plaintiff's claims sufficiently to fully address the pending motions in these cases.[6]

---

[6] The Court notes that the 1730 Complaint has two attachments: (1) "Affidavit (Petitioner); Notice of Liability Regarding Trespass, Fee Schedule and Remedy" and (2) "Affidavit of Truth Natural Person."  However, neither appears to contain any allegations related to the case.  The first appears to be a list of financial charges to be assessed for general actions taken or harm suffered as a result of government activities.  (1730 Case-Doc. 1-2.)  The second seems to be intended to assert that Plaintiff's compliance with laws or participation

3

### 1.    1730 Complaint

The overall claim presented in the 1730 Complaint is that the DVRO issued by Defendant Commissioner Boucek on June 21, 2023 was invalid and illegal because Defendant Commissioner Boucek should have been disqualified from issuing the DVRO based on her personal connections. (1730 Compl. at 8–18, 100–102, 104–105.)  Plaintiff asks the Court to void the June 21, 2023 DVRO and stop Defendant Commissioner Boucek from taking any further action in the family law case.  (*Id.* at 112–13.)

Plaintiff alleges Defendant Commissioner Leah Boucek "violated Plaintiff's Constitutional Right to Liberty of locomotion … [under] the 14th Amendment" because she did not disqualify herself from hearing Plaintiff's family law case.  (*Id.* at 10.)  More specifically, Plaintiff claims Defendant Commissioner Boucek issued "a False PERMANENT Restraining Order against Plaintiff, Restraining [Plaintiff] from her children without any evidence of any harm to [Plaintiff's] children, or to Defendant [Samuel] Martinette . . . ."  (*Id.* at 15.)

Plaintiff asserts numerous reasons for Defendant Commissioner Boucek's disqualification, including: she lived "five houses away from Defendant Samuel Martinette"[7] (*id.* at 13, 101); had personal connections to Defendant Martinette through Commissioner Boucek's spouse (*id.* at 13–14); and discussed the family law case with a neighbor and a kindergarten teacher (*id.* at 14).

Plaintiff asserts that Defendant Commissioner Boucek's issuance of the DVRO against Plaintiff when Defendant Commissioner Boucek should have been disqualified denied Plaintiff her "right to have her case heard by an unbiased Governor Appointed Judge, which is a Fundamental Right of liberty guaranteed by the 14th Amendment." (*Id.*

---

in government programs does not alter her status as "a natural, freeborn Sovereign … [not] subject to any entity anywhere."  (1730 Case-Doc. 1-3.)  Additionally, as noted above, in conjunction with the filing of the 1839 Complaint, Plaintiff filed an application seeking to set aside the DVRO.  (1839 Case-Doc. 3.)

[7] Defendant Samuel Martinette is Plaintiff's ex-husband.

4

at 16.)  Plaintiff alleges this caused her to be "forced to set hearings, file documents, research law, serve court documents, attend court hearings, pay filing fees, make copies, and set up court calls" and suffer "a loss of time, breakdown of family relationships, loss of reputation, injury, bodily pain, mental suffering, humiliation, distress, anguish, humiliation of mind, shame, public ridicule, loss of time, loss of earnings, loss of sleep, interruptions in occupation, injury to reputation, and great physical inconvenience and discomfort, loss of motherhood, and a breakdown in the relationship with her children." (*Id.* at 17.[8])

Plaintiff asserts that Defendant Commissioner Boucek harmed Plaintiff by issuing an "invalid" and "illegal" restraining order that was invalid and illegal because Defendant Commissioner Boucek did not disclose her personal connections to Plaintiff's ex-husband and those connections should have resulted in her disqualification prior to issuing the DVRO.  (*Id.* at 100–05.)  Plaintiff alleges the restraining order should be void because Defendant Commissioner Boucek should have been "disqualified from serving as a court-appointed judge in [the family law case]." (*Id.* at 104.)

Plaintiff claims that "Defendant Judge Michael T. Smyth had actual knowledge of subordinate's violation of Plaintiff's Fundamental rights, … acquiesced in that violation through his silent acceptance, … was the supervisor over the subordinate [Defendant Commissioner Boucek] [and] had a duty to control the court process, and to oversee and to make sure [Defendant Commissioner Boucek's] court orders are in accordance with law." (*Id.* at 25–26.)

As to other named Defendants, Plaintiff's claims are based on allegations they: should have intervened to stop Defendant Commissioner Boucek from issuing the DVRO against Plaintiff when she should have been disqualified (*see e.g.*, *id.* at 33–35); caused

---

[8] These same allegations regarding the costs of legal proceedings, humiliation, and injury to relationships and reputation are repeated verbatim throughout the Complaint as to each Defendant.  (*Id.* at 27, 32, 40, 47, 52–53, 61, 69, 76–77, 84–85, 88, 92, 105.)

Defendant Commissioner Boucek "to act beyond her authority" (*see e.g. id.*, at 44–45); "refus[ed] to file a Statement of Disqualification against [Defendant Commissioner Boucek]" (*id.* at 63); "set in motion a series of actions of [Defendant Commissioner Boucek] … which caused Plaintiff injuries" (*see e.g.*, *id.* at 37–38); or conspired with Defendant Commissioner Boucek to issue the DVRO (*see e.g.*, *id.* at 29).[9]

The factual allegations as to the other Defendants only state their connection to the family law case. As examples, Plaintiff alleges which Defendants represented certain parties in the family law case. (*Id.* at 29 (Defendant Yip "represented Defendant Samuel Martinette in [the family law case]"); *Id.* at 54 (Defendant Sachdev "is the attorney for the minor children."); *Id.* at 71 (Defendant Willmore "add[ed] additional litigation of a civil lawsuit").) Plaintiff also alleges other Defendants falsely testified in the family law case and this "cause[d] an invalid restraining order to be issued against Plaintiff." (*Id.* at 46, 75, 79, 84, 88, 91–92.)

Plaintiff seeks an order "[f]or a withdrawal and voiding of the [r]estraining [o]rder issued on June 21, 2023, and a [v]oid of any and all court orders, and findings of fact made by [Defendant Commissioner Boucek]" and "[f]or a preliminary injunction ordering … Defendants to cease from taking any further action … in the family law case." (*Id.* at 112–13.) Plaintiff also seeks $10,000,000 in compensatory damages as to each Defendant and $30,000,000 in punitive damages as to each Defendant. (*Id.* at 113.)

### 2.   1839 Complaint

Plaintiff's 1839 Complaint is also based on the underlying allegation that Defendant Commissioner Boucek should have been disqualified from Plaintiff's family law case and that other named Defendants had a duty to raise her disqualification. (1839 Compl. at 14–16, 42.) The primary variation in the factual allegations of the 1839 Complaint is the

---

[9] These same allegations are repeated throughout the Complaint as to each Defendant, however, given their repetition without any additional factual basis, the Court declines to cite every repetition within the lengthy Complaint.

assertion that each Defendant participated in, failed to intervene to stop, or was a witness to a September 21, 2023 ex parte hearing.  (*See id.* at 4, 14–16, 218 (general allegations regarding ex parte hearing); *Id.* at 30, 33 (Yip); *Id.* at 41–42 (Sachdev); *Id.* at 47 (Heinrich).)    Plaintiff alleges Defendant Commissioner Boucek "held ex parte communication on September 21, 2023 and d[i]sguised it as a lawful[] court hearing, where orders were made while she was disqualified and without subject matter, or personal jurisdiction." (*Id.* at 56.)  She goes on to allege Defendant Commissioner Boucek "did not have jurisdiction, due to the fact she was violating the law by staying on the case, she was required to remove herself, and notify the court" and prohibited from "hav[ing] ex parte communications with any of the Party's without the notice, and consent of the other party." (*Id.* at 57.)

The 1839 Complaint alleges this ex parte hearing in the family law case "caused an invalid order to be issued against Plaintiff." (*Id.* at 50.)  Like the 1730 Complaint, the 1839 Complaint alleges Plaintiff "was forced to defend, and abide by an unlawful Restraining Order Petition, against the will of Plaintiff." (*Id.* at 57.)  She seeks an order that no further action be taken in the family law case.  (*Id.* at 61.)  Plaintiff seeks "a withdrawal and voiding of the Court Order issued on 9/21/2023, and a Void of any and all court orders, and findings of facts made by" Defendant Commissioner Boucek.  (*Id.*)

Plaintiff's allegations as to Defendant Judge Smyth are the same as those asserted in the 1730 Complaint, including that he was required to supervise, evaluate, and take action regarding Defendant Commissioner Boucek's alleged violation of Plaintiff's rights under the Fourteenth Amendment in issuing the DVRO with the only change being he should have acted regarding Defendant Commissioner proceeding with a hearing on September 21, 2023 in the family law case without Plaintiff present.  (*See id.* at 18–28.)

Other than their participation in or presence at the September 21, 2023 hearing noted above, the allegations against the other Defendants also are largely the same as in the 1730 Complaint, including allegations each "conspired with Defendant Commissioner Boucek," "set in motion a series of actions of" Defendant Commissioner Boucek, and "failed to

7

intervene to stop the violation." (*Id.* at 28, 32 (Yip); *Id.* at 37 (Sachdev); *Id.* at 46 (Heinrich); *Id.* at 50 (Samuel Martinette).) Like the 1730 Complaint, the 1839 Complaint identifies Defendants' connections to the family law case. (*See e.g., id.* at 29 (Yip represents Defendant Samuel Martinette in the family law case); *see e.g., id.* at 41 (Sachdev represents the minor children in the family law case).) The 1839 Complaint seeks an order from this Court to stop any action in the family law case and void the DVRO, the September 21, 2023 Order, and all other orders from Defendant Commissioner Boucek. (1839 Compl. at 61.)

## B.    Judicial Notice

Judicial notice and incorporation-by-reference are exceptions to the general rule that courts should not consider materials outside the pleading on a motion to dismiss. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

"Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute.'" *Id.* at 999 (quoting Fed. R. Evid. 201(b)). This means that "'a court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment,' … [b]ut a court cannot take judicial notice of disputed facts contained in such public records." *Id.* (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)).

Under the incorporation by reference doctrine, courts may "take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (internal quotations and citations omitted). "[I]ncorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Khoja*, 899 F.3d at 1002. It allows a defendant to seek incorporation of "a document into the complaint 'if the plaintiff refers extensively to the document, or the document forms the basis of the plaintiff's claim.'" *Id.* (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

1    Multiple Defendants have filed requests for judicial notice either in conjunction with
2    a motion or as a separate filing in the 1730 Case, the 1839 Case, or both.  (1730 Case-Docs.
3    17-2, 19-2, 26-3, 34-8, 54-1 (filed with motions), 36, 43, 45 (separately filed), and 53
4    (lodgment for Doc. 45); 1839 Case-Docs. 22-2, 24-2 (filed with motions), 27–28
5    (separately filed), 31 (lodgment for Doc. 28).[10])  There is also significant overlap in their
6    requests with multiple Defendants asking the Court to take judicial notice of the same
7    documents.

8        The Court need not rely on many of these documents to address the pending motions
9    and is not inclined to take judicial notice of or incorporate documents by reference when it
10   is not necessary to ruling on the pending motions, particularly when the Court is dismissing
11   these cases without leave to amend.  Accordingly, the Court takes judicial notice of the
12   following: (1) the June 21, 2023 Minute Order in the family law case (Ex. 5 to Defendant
13   Yip's Motion to Dismiss [1730 Case-Doc. 19-3 at 85–88]); (2) the September 8, 2023
14   Proposed Statement of Decision (Ex. 3 to Defendant Yip's Motion to Dismiss [1730 Case-
15   Doc. 19-3 at 44–73]; (3) June 28, 2023 Notice of Hearing for the September 21, 2023
16   Hearing (Ex. K in support of Defendant Sachdev's Motion to Dismiss [1839 Case-Doc.
17   22-2 at 100–104]; (4) Minutes of the September 21, 2023 Hearing (Ex. 11 to [1839 Case-
18   Doc. 24-3 at 119–121]; and (5) the December 19, 2023 Final Statement of Decision (Ex.
19   13 to Defendant Yip's Supplemental Request for Judicial Notice and Notice of Lodgment
20   [1730 Case-Docs. 28 (Supplemental Request for Judicial Notice), 53 (Notice of Lodgment)
21   at 6–35]).

22       The Court takes judicial notice of these public records but does not take judicial
23   notice of any disputed facts within them.  *See Khoja*, 899 F.3d at 999.  The Defendants'

---

[10] Defendant Yip filed two Supplemental Requests for Judicial Notice asking the Court to take judicial notice of the state court's December 19, 2023 Final Statement of Decision. (1730 Case-Doc. 45; 1839 Case-Doc. 28.)  The Notices of Lodgment that included the document were filed separately from the Supplement Requests for Judicial Notice in each case.  (1730 Case-Doc. 53; 1839 Case-Doc. 31.)

other requests for judicial notice are **<u>DENIED</u>** because the documents are not necessary to the resolution of the pending motions. *Limcaco v. Wynn*, No. 21-56285, 2023 WL 154965, at * (9th Cir. Jan. 11, 2023) (finding district court "did not abuse its discretion in denying the motion to take judicial notice of these documents, which it did not rely upon, and which were not necessary to its rulings on the motions to dismiss.") (citing *Great Basin Mine Watch v. Hankins*, 456 F.3d 955, 976 (9th Cir. 2006)).

### C. Motions

Currently pending before the Court in the 1730 Case are fourteen motions, including two supplemental motions (1730 Case-Docs. 17–19, 21–22, 26, 34, 41–42 (supplements to 1730 Case-Docs. 21–22), 48, 49, 50, 51, and 54) and four separately filed requests for judicial notice (1730 Case-Docs. 36, 43, 45, 53). Seven of the Defendants named in the 1730 Complaint have filed motions to dismiss. (1730 Case-Doc. 17 (Defendant Sachdev), 18 (Defendants Commissioner Boucek and Judge Smyth), 19 (Defendant Yip), 21, 41 (pro se Defendant Louis Martinette), 22, 42 (pro se Defendant Marie Martinette), 34 (Defendant Joseph Willmore).) Defendant Sherman filed a Special Motion to Strike Plaintiff's Complaint Pursuant to California Code of Civil Procedure Section 425.16 (hereinafter, "Anti-SLAPP Motion"). (1730 Case-Doc. 26.) And then after Plaintiff filed her 2nd Amended Complaint (1730 Case-Doc. 47), six of the Defendants filed motions to strike it as untimely. (1730 Case-Docs. 48, 49, 50, 51, 54.)

All six named Defendants filed motions to dismiss in the 1839 Case. (1839 Case-Docs. 14 (pro se Defendant Samuel Martinette), 17 (pro se Defendant Mark Heinrich), 22 (Defendant Sachdev), 23 (Defendants Commissioner Boucek and Judge Smyth), 24 (Defendant Yip).) There are also three separately filed requests for judicial notice (1839 Case-Docs. 27–28, 31) in addition to the previously noted application to set aside filed by Plaintiff in conjunction with the filing of the 1839 Complaint (1839 Case-Doc. 3).

## II.     DISCUSSION

The Court first addresses Plaintiff's 2nd Amended Complaint filed in the 1730 Case and the motions to strike it.  The Court then addresses Defendants' arguments for dismissal of both cases including addressing Defendants' requests for judicial notice.

### A.     Motions to Strike Plaintiff's 2nd Amended Complaint

Plaintiff's Complaint was filed on September 19, 2023 and the motions to dismiss and strike detailed above followed from October 10, 2023 to October 24, 2023 with two supplemental motions to dismiss filed by pro se Defendants on December 20, 2023 (1730 Case-Docs. 17–19. 21–22, 26, 34, 41–42.)  Plaintiff filed the 2nd Amended Complaint on February 1, 2024.  (1730 Case-Doc. 47.)  The Court concludes this filing was untimely as an amendment as a matter of right under Federal Rule of Civil Procedure 15(a)(1) and Plaintiff failed to obtain the stipulation of Defendants or permission from the Court to amend under Rule 15(a)(2).

### 1.     Amending as a Matter of Right – Rule 15(a)(1)

Rule 15(a)(1) addresses amending as a matter of course and states that:

A party may amend its pleading once as a matter of course no later than:
(A) 21 days after serving it, or
(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

To the extent Plaintiff's filing of the 2nd Amended Complaint was an attempt to file an amended complaint as a matter of right under Rule 15(a)(1)(A), it was untimely.  The 2nd Amended Complaint, filed on February 2, 2024, was filed well more than 21 days after Plaintiff claims to have served her initial Complaint.  Plaintiff asserts she served the Complaint on Defendants on September 19, 2023, September 20, 2023, or September 21, 2023, depending on the Defendant.[11]  (1730 Case-Docs. 3–16.)  The 2nd Amended

---

[11] As explained further below, pro se Defendants Louis and Marie Martinette both assert they were never served with the Complaint.  (*See infra* II.B.4.)

Complaint was filed on February 1, 2024.   (1730 Case-Doc. 47.)   Because this is significantly more than 21 days after Plaintiff claims she served the Complaint, the 2nd Amended Complaint could not be filed as a matter of course under Rule 15(a)(1)(A).

Amendment under Rule 15(a)(1)(B) was also not timely.   Under that Rule, a complaint is a pleading "to which a responsive pleading is required" and numerous Defendants filed "motion[s] under Rule 12(b) [and] (f)."   Fed. R. Civ. P. 15(a)(1)(B). Because the 2nd Amended Complaint was not filed within 21 days of service of any of the Defendants' motions to dismiss, the filing was not timely under Rule 15(a)(1)(B).

Thus, Plaintiff's 2nd Amended Complaint was not timely under Rule 15(a)(1).

### 2.    Amending By Consent or With Leave of Court – Rule 15(a)(2)

Rule 15(a)(2) addresses other amendments and states, "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."   Plaintiff did not obtain leave from the Court to file her 2nd Amended Complaint and the parties' motions to strike the 2nd Amended Complaint reflect that she did not obtain the consent of any party to file the 2nd Amended Complaint.   (1730 Case-Docs. 48, 49, 50, 51, and 54.)

Because Plaintiff's 2nd Amended Complaint is not timely as an amendment as a matter of right under Rule 15(a)(1) or permitted by the Court or with the consent of the Defendants, the motions to strike the 2nd Amended Complaint (1730 Case-Docs. 48, 49, 50, 51, and 54) are **GRANTED** and Plaintiff's 2nd Amended Complaint (Doc. 47) is **STRICKEN**.

### B.    Motions to Dismiss

### 1.    Federal Rules of Civil Procedure

Defendants in both the 1730 Case and the 1839 Case seek dismissal under: Rule 12(b)(1) based on lack of subject-matter jurisdiction; Rule 12(b)(6) for failure to state claim; and Rule 8 for failing to provide a short and plain statement of each claim.   (1730 Case-Docs. 17–19, 21–22, 34, 41–42; 1839 Case-Docs. 14, 17, 22–24.)   Because the Court

finds the Complaint must be dismissed under Rule 12(b)(1) and 12(b)(6), the Court does not additionally address whether the Complaint fails to comply with Rule 8.

### a)     Rule 12(b)(1)

Rule 12(b)(1) allows a defendant to move to dismiss a complaint based on a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Tosco Corp. v. Cmtys. for a Better Env.*, 236 F.3d 495, 499 (9th Cir. 2001), *overruled on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (quoting *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* (citation omitted).

### b)     Rule 12(b)(6)

Pursuant to Rule 12(b)(6), an action may be dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

///

1   However, the Court is "not bound to accept as true a legal conclusion couched as a
2   factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Nor is the
3   Court "required to accept as true allegations that contradict exhibits attached to the
4   Complaint or matters properly subject to judicial notice, or allegations that are merely
5   conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v.*
6   *Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  "In sum, for a complaint to survive
7   a motion to dismiss, the non-conclusory factual content, and reasonable inferences from
8   that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss*
9   *v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation marks omitted).

10        **2.      Specific Grounds for Dismissal Raised in Motions to Dismiss**

11        Defendants' motions to dismiss assert numerous grounds for dismissing the 1730
12   and 1839 Complaints without leave to amend and with prejudice: (1) the *Rooker-Feldman*
13   doctrine; (2) judicial immunity; (3) Defendants not being state actors;[12] (4) failing to allege
14   a plausible constitutional violation; (5) the domestic relations exception; (6) *Younger*
15   abstention; (7) the *Noerr-Pennington* doctrine; (8) failing to comply with Rule 8; (9) the
16   frivolity of the Complaint; and (10) failure to properly serve as to certain Defendants.
17   (1730 Case-Docs. 17–19, 21–22, 34, 41–42; 1839 Case-Docs. 14, 17, 22–24.)  Most of
18   these issues are raised by multiple Defendants.

19        The Court need not reach every basis argued because the *Rooker-Feldman* doctrine,
20   judicial immunity, and all Defendants other than Defendant Commissioner Boucek and
21   Defendant Judge Smyth not being state actors require dismissal of both cases without leave
22   to amend.  Rather than addressing each individual motion, the Court addresses these issues
23   collectively.

24
25
26   _____

27
28   [12] Defendants assert other deficiencies in stating any plausible claim, including failing to
     allege a constitutional violation.

### a)     *Rooker-Feldman* Doctrine

"Under *Rooker–Feldman*, a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court.  The United States Supreme Court is the only federal court with jurisdiction to hear such an appeal." *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003).  The "doctrine bars a district court from exercising jurisdiction … over an action explicitly styled as a direct appeal, but also over the 'de facto equivalent' of such an appeal."  *Cooper v. Ramos*, 704 F.3d 772, 777 (2012) (quoting *Noel*, 341 F.3d at 1155).  A case presents "a forbidden de facto appeal under *Rooker-Feldman* when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court and seeks relief from the judgment of that court." *Id.* at 777–78 (explaining that in "determin[ing] whether an action functions as a de facto appeal, we 'pay close attention to the *relief* sought by the federal-court plaintiff.") (quoting *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 (9th Cir. 2003)).  "If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court and seeks relief from a state court judgment based on that decision, *Rooker–Feldman* bars subject matter jurisdiction in federal district court.  If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker–Feldman* does not bar jurisdiction."  *Noel*, 341 F.3d at 1164.

"*Rooker–Feldman* 'is confined to cases … brought by state-court losers ... inviting district court review and rejection of [the state court's] judgments. *Skinner v. Switzer*, 562 U.S. 521, 532 (2011) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)); *see also Reed v. Goertz*, 598 U.S. 230, 235 (2023) (distinguishing federal challenges to state statutes or rules and reiterating that *Rooker-Feldman* "prohibits federal courts from adjudicating cases brought by state-court losing parties challenging state-court judgments.") (citations omitted).

"A federal district court dealing with a suit that is, in part, a forbidden de facto appeal from a judicial decision of a state court must refuse to hear the forbidden appeal.  As part of that refusal, it must also refuse to decide any issue raised in the suit that is 'inextricably

intertwined' with an issue resolved by the state court in its judicial decision." *Noel*, 341 F.3d at 1158.  "[C]laims [are] inextricably intertwined where the relief requested in the federal action would effectively reverse the state court decision or void its ruling." *Cooper*, 704 F.3d at 779 (internal quotation marks and citations omitted).  Or stated another way, "the federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated up upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state court judgment." *Id.* (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987)).

Plaintiff does not "explicitly style[] [her claims] as a direct appeal," however, the 1730 and 1839 Complaints are "the 'de facto equivalent' of such an appeal." *Cooper*, 704 F.3d at 777.  Plaintiff's claims in both cases are based on her allegation that the DVRO issued by Defendant Commissioner Boucek against Plaintiff was unlawful or invalid because Defendant Commissioner Boucek allegedly should have disqualified herself from the family law case.  (1730 Compl. at 100–05; 1839 Compl. at 14, 16, 42.)  Additionally, the claims against all other Defendants in both cases are based on Plaintiff's assertion they failed to intervene to stop Defendant Commissioner Boucek or conspired with Defendant Commissioner Boucek in some respect to issue the allegedly illegal or invalid DVRO against Plaintiff.  (*See e.g.*, 1730 Compl. at 29, 33–35, 37–38, 44–45, 63; 1839 Compl. at 28, 32, 37, 46, 50.)  The allegations of the 1839 Complaint additionally take issue with an alleged ex parte hearing, but the 1839 Complaint is still also based on Defendant Commissioner Boucek not disqualifying herself and Plaintiff 's effort to void the DVRO and all other orders from Defendant Commissioner Boucek.  (1839 Compl. at 14, 16, 42, 61.)

Plaintiff's Complaints fall within *Rooker-Feldman*'s jurisdictional bar because they are a de facto appeal of the DVRO issued against Plaintiff.  Plaintiff is complaining of "a legal wrong committed by the state court"—the issuance of the DVRO against Plaintiff in

16

the family law case—"and seeks relief from the judgment of that court"—withdrawal or voiding of the DVRO. *Cooper*, 704 F.3d at 778. The legal wrong alleged in the Complaints is the issuance of the DVRO order against Plaintiff by Defendant Commissioner Boucek when she allegedly should have been disqualified. (1730 Compl. at 15 (characterizing DVRO as "false permanent restraining order against Plaintiff"); *id.* at 100–05 (describing harm as issuance of "invalid" and "illegal" restraining order); *see e.g.*, 1839 Compl. at 57 (challenging DVRO based on Defendant Commissioner Boucek staying on the case when she should have been removed).)

The relief Plaintiff seeks is the "withdrawal and voiding of the [r]estraining order issued on June 21, 2023, and a void of any and all court orders and findings of fact by [Defendant Commissioner Boucek]." (1730 Compl. at 112–113; 1839 Compl. at 61.) Plaintiff has lost in state court and is asking this Court to review and reject the state court's DVRO against her and to void it and any other decision by Defendant Commissioner Boucek. *Skinner*, 562 U.S. at 532 ("*Rooker–Feldman* is confined to cases … brought by state-court losers ... inviting district court review and rejection of [the state court's] judgments.") (citations omitted).

Because this case is a de facto appeal from the state court's DVRO, this Court must refuse to hear it and "also refuse to decide any issue raised in the suit that is inextricably intertwined with" the state court's issuance of the DVRO against Plaintiff. *Noel*, 341 F.3d at 1158. Plaintiff asserts several reasons for asking this Court to find the state court DVRO illegal and void it—disqualification and a conspiracy. To the extent these challenges to the state court's issuance of the DVRO could be considered in any respect separate from her de facto appeal of the DVRO, they are inextricably intertwined with the state court's DVRO.

The primary relief requested in this case to remedy these alleged errors—voiding or withdrawing the DVRO—"would effectively reverse the state court decision or void its ruling." *Cooper*, 704 F.3d at 779 ("claims [are] inextricably intertwined where the relief requested in the federal action would effectively reverse the state court decision or void its

17

ruling.")  (internal quotation marks and citations omitted).  Plaintiff alleges that the other Defendants conspired with Defendant Commissioner Boucek and did not intervene to stop her from issuing the DVRO when she should have been disqualified.[13]  Similarly, although the 1839 Complaint adds Defendant Commissioner Boucek holding of the September 21, 2023 hearing without Plaintiff present, the challenge is still based, at least in part, on Plaintiff's allegation that Defendant Commissioner Boucek should have been disqualified. Granting the damages sought or voiding the DVRO would necessarily rely on the alleged illegality of the DVRO and "effectively reverse the state court decision or void its ruling." *Cooper*, 704 F.3d at 779.  "Where federal relief can only be predicated up upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state court judgment."  *Id.* (citation omitted); *see also Boudette v. Oskerson*, No. 22-36003, 2024 WL 1342613, at *2 (9th Cir. Mar. 29, 2024) (finding case "clearly barred by *Rooker-Feldman*" when the plaintiff's alleged injuries "flow from a series of state court judgments that ha[d] been entered against [her] in protracted litigation" with an ex-spouse over property); *see also Bianchi*, 334 F.3d at 898 (finding district court lacked jurisdiction under *Rooker-Feldman* when a federal plaintiff is "essentially ask[ing] the federal court to review the state court's denial in a judicial proceeding … and to afford him the same individual remedy he was denied in state court.") (citations omitted).  Plaintiff is "essentially ask[ing] [this] [C]ourt to review the state court's denial in a judicial proceeding … and to afford [her] the same individual remedy [she] was denied in state court."  *Bianchi*, 334 F.3d at 898–99 (internal citation omitted).

---

[13] The Court will not cite the allegations as to each individual Defendant among the lengthy Complaints, but notes they are similar as to each Defendant attorney.  For example, Plaintiff alleges Defendant Yip "conspired with Defendant Commissioner Leah Boucek" (1730 Compl. at 29), was obligated to raise disqualification of Defendant Commissioner Boucek and intervene to stop her (*id.* at 33–35) and forced Plaintiff to participate in a legal action (*id.* at 33).

Thus, Plaintiff's claims in the 1730 and 1839 cases are barred by *Rooker-Feldman* and these cases must both be dismissed for lack of subject matter jurisdiction. *Id.* at 898 ("If claims raised in the federal court action are 'inextricably intertwined' with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules, then the federal complaint must be dismissed for lack of subject matter jurisdiction.") This is a sufficient basis for dismissal of both Complaints. However, given the Court's obligation to consider whether leave to amend should be granted, the Court addresses two additional issues that require dismissal of these cases.

### a)   Judicial Immunity

Defendants Commissioner Boucek and Judge Smyth move to dismiss Plaintiff's claims without leave to amend based on judicial immunity. (1730 Case-Doc. 18-1 at 7–9; 1839 Case-Doc. 23-1 at 4–7.) Defendant Commissioner Boucek argues she is entitled to absolute judicial immunity because Plaintiff's claims arise from actions she took as a state judicial officer in a case before her. (1730 Case-Doc. 18-1 at 8; 1839 Case-Doc. 23-1 at 7.) More specifically, she explains that granting the DVRO against Plaintiff and determining whether she should have been disqualified and holding a hearing in the state court are judicial in nature. (1730 Case-Doc. 18-1 at 8; 1839 Case-Doc. 23-1 at 7.) Similarly, Judge Smyth argues the conduct alleged against him—that he failed to properly supervise or correct Defendant Commissioner Boucek's rulings—are based on his duties as Presiding Judge that were "very much a function of his judicial office." (1730 Case-Doc. 18-1 at 9; 1839 Case-Doc. 23-1 at 7.)

State judges and commissioners of the superior courts are entitled to immunity for their judicial acts. *Swift v. California*, 384 F.3d 1184, 1188 (9th Cir. 2004) ("It is well established that state judges are entitled to absolute immunity for their judicial acts.") (citations omitted); *Franchesi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995); *see also Ricotta v. State of California*, 4 F. Supp. 2d 961, 973 (S.D. Cal. 1998) ("Judicial immunity extends to municipal court commissioners."). "The primary policy of extending immunity

19

to judges … is to ensure independent and disinterested judicial … decisionmaking." *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986) (citations omitted).

Judicial immunity applies in cases brought under § 1983. *Stump v. Sparkman*, 435 U.S. 349, 356 (1978) (citation omitted). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Id.* at 356–57. Additionally, "allegations that a conspiracy produced a certain decision should no more pierce the actor's immunity than allegations of bad faith, personal interest or outright malevolence." *Ashelman*, 793 F.2d at 1078 (citations omitted).

Plaintiff's claims—that Defendant Commissioner Boucek violated her constitutional rights by issuing the DVRO against Plaintiff when Defendant Commissioner Boucek should have disqualified herself from the case and not held a hearing without Plaintiff present (*see supra* I.A)—clearly fall within Defendant Commissioner Boucek's judicial capacity. *See Stump*, 435 U.S. at 356; *Ashelman*, 793 F.2d at 1075. Similarly, Judge Smyth's alleged conduct—not supervising Defendant Commissioner Boucek's rulings, including her not disqualifying herself and issuing the DVRO against Plaintiff, and holding a hearing without a party present—falls squarely within his judicial capacity.

Defendants Commissioner Boucek and Judge Smyth are both entitled to judicial immunity. Accordingly, Plaintiff's claims against Defendant Commissioner Boucek and Defendant Judge Smyth are **DISMISSED**.[14]

### b)     Non-Judicial Defendants – State Actor Requirement

The only Defendants named in the 1730 Complaint and 1839 Complaint that appear to be judicial officers are Defendant Commissioner Boucek and Defendant Judge Smyth. The remaining Defendants (hereinafter, "Non-Judicial Defendants") are not judicial officers. Numerous Non-Judicial Defendants, in addition to raising the *Rooker-Feldman*

---

[14] The Court addresses whether leave to amend should be granted below. (*See infra* II.B.3.)

bar, also move to dismiss based on the Non-Judicial Defendants not being state actors as required for a § 1983 claim.  (1730 Case-Doc. 17-1 at 12–13; 1730 Case-Doc. 19-1 at 14–15; 1730 Case-Doc. 34 at 7; 1839 Case-Doc. 22-1 at 14–15, 1839 Case-Doc. 24 at 16–17.)

"A § 1983 plaintiff must demonstrate a deprivation of a right secured by the Constitution or laws of the United States,[15] *and that the defendant acted under color of state law.*"  *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added)).  "In order to recover under § 1983 for conduct by the defendant, a plaintiff must show 'that the conduct allegedly causing the deprivation of a federal right *be fairly attributable to the State*.'"  *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (emphasis added) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)) (citations omitted).  "The state-action element in § 1983 'excludes from its reach merely private conduct, no matter how discriminatory or wrongful.'"  *Id.* (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)).

---

[15] Plaintiff's Complaints also fail to plausibly allege the requisite deprivation of a constitutional right, as raised by multiple Defendants.  (1730 Case-Doc. 17 at 14 ("Plaintiff provides no factual evidence to show she was denied due process [and] [t]he fact remains, Plaintiff was given every opportunity to be heard (and then some) on the permanent DVRO over the four evidentiary hearings.").); 1730 Case-Doc. 18-1 at 10 ("There is simply nothing irregular or improper about judicial officers deciding whether they are disqualified or granting or denying DVRO requests after a hearing."); 1730 Case-Doc. 19-1 at 14 ("Here, the conclusory allegations are based solely on Plaintiff's wild speculation and unsupported assumptions that Defendant Yip, [counsel for Plaintiff's ex-husband in the family law case,] was involved in a conspiracy with the other participants in the restraining order hearing."); 1730 Case-Doc. 34 at 6 ("no facts are pled to show that this moving defendant, [Plaintiff's own counsel in the family law case] was part of any conspiracy or joint action with Commissioner Boucek, nor are there any allegations which would support such a serious and inflammatory accusation.").  However, because the Court finds the case are barred by the *Rooker-Feldman* doctrine, the judicial officer Defendants are immune, and the Non-Judicial Defendants cannot be considered state actors, the Court need not additionally address the lack of a plausible constitutional violation under the Fourteenth Amendment in either case.

The allegations in the Complaints indicate that the Non-Judicial Defendants' alleged roles in the issuance of the DVRO and the September 21, 2023 hearing, or even in the family law case in general, were only as private actors.  First, to the extent the Complaints identify a Defendant's connection to the family law case, the role alleged makes clear they are not a state actor.  Although challenging to deduce from the lengthy and repetitive allegations, the connections fall into two groups: (1) those that provided testimony or information used in the DVRO proceeding or were at the September 21, 2023 hearing and (2) those that served as counsel for a party in the family law case or some other legal proceeding related to the family law case.  For example, Defendant Yip is alleged to have represented Defendant Martinette, Plaintiff's ex-husband, in the family law case, and Defendant Sachdev "is the attorney for the minor children."  (1730 Compl. at 29 (Yip); 54 (Sachdev); *see also supra* I.A (summarizing allegations of the Complaint, including examples or allegations regarding the roles of Defendants).)  Defendants Wise, Heinrich, Samuel Martinette, Louis Martinette, and Marie Martinette are alleged to have falsely testified in the family law case in the DVRO proceeding (*id.* at 46, 75, 79, 84, 92), but that would not make them state actors.  The factual allegations in the Complaints do not even suggest the conduct of the Non-Judicial Defendants could "be fairly attributable to the State." *Caviness*, 590 F.3d at 812 (explaining that "a plaintiff must show that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State.")

Second, Plaintiff's allegations that the Non-Judicial Defendants conspired with Defendant Commissioner Boucek in the issuance of the DVRO or in conducting of the September 21, 2023 hearing are insufficient to meet the state actor requirement of § 1983.  Plaintiff alleges repeatedly throughout the Complaints numerous Defendants "set in motion a series of actions of the State Agent Commissioner Leah Boucek," or were "acting under color of law because [their] actions caused a Government State Agent," Defendant Commissioner Boucek, "to subject the Plaintiff to a deprivation of Plaintiff's liberty of locomotion."  (*See e.g.*, 1730 Compl. at 67, 70, 77–78; *see e.g.*, 1839 Compl. at 23, 32, 37, 46, 50.)  However, the allegations are conclusory and completely insufficient to consider

these individuals state actors based on a conspiracy.  As detailed above, the only factual allegations are that they participated in the family law case as a witness or attorney and did not seek Defendant Commissioner Boucek's disqualification or stop her from conducting a noticed hearing Plaintiff did not appear for.  "[M]erely resorting to the courts … does not make a party a co-conspirator or a joint actor with the judge."  *Price v. State of Hawaii*, 939 F.2d 702, 708 (1991) (citation omitted); *Schucker v. Rockwood*, 846 F.2d 1202, 1205 (9th Cir. 1988) ("[C]onclusory allegations that [a Judge] conspired with [attorneys] are insufficient to support [a] section 1983 claim.") (citing *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir.1980)).  (per curiam).

Third, Plaintiff's repeated conclusory assertions that Defendants were state actors are insufficient to show that any of the Non-Judicial Defendants were acting under color of state law.  *Kirtley*, 326 F.3d 1088, 1092 ("plaintiff must demonstrate … that the defendant acted under color of state law.").  Here, Plaintiff recognizes the Non-Judicial Defendants are private actors, but attempts to get around the requirement by simply asserting they are state actors.  Plaintiff alleges "[a]lthough [each Defendant] *is a private individual and not a state official*, I instruct you … that [the] relationship between [each Defendant] and the state was sufficiently close that [they] were acting under color of state law."  (1730 Compl. at 53 (example of allegation repeated throughout the Complaints as to numerous Defendants) (emphasis added).)  The Complaints go on to state "[t]his element of Plaintiff's claim is not in dispute, and you must find that this element has been established."  (*Id.*)  There are no facts supporting this assertion.  To the extent Plaintiff relies on their roles in the family law case—the only facts alleged as to the Non-Judicial Defendants—that is insufficient to make them state actors.  "Invoking state legal procedures does not constitute 'joint participation' or 'conspiracy' with state officials sufficient to satisfy section 1983's state action requirement."  *Schucker*, 846 F.2d at 1205 (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 n.21 (1982)).

Plaintiff also alleges Defendants were "acting under color of law because [they were] judicial officer[s] of the court who subjected Plaintiff to a deprivation of her liberty, and

by [their] conduct, under State Law, deprived Plaintiff of her liberty without due process." But generally, private attorneys are not state actors. *Briley v. California*, 564 F.2d 849, 855 (9th Cir. 1977) ("We have repeatedly held that a privately-retained attorney does not act under color of state law for purposes of actions brought under the Civil Rights Act."). In family law cases, like this one, courts regularly reject attempts to label an attorney for an opposing party as a state actor under § 1983. *See Plasola v. California*, Case No. CV 19-5592 JAK (SS), 2019 WL 8013107, at *2 (C.D. Cal. Nov. 8, 2019) (collecting cases).

The Non-Judicial Defendants are either private attorneys or private individuals and there are no factual allegations from which the Court could even infer they were acting under color of state law. Accordingly, the Court **DISMISSES** the claims against all Non-Judicial Defendants.

### 3. Denial of Leave to Amend

"[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted). Here, in addition to not seeking leave to amend or explaining how she could, Plaintiff did not respond to any of the motions filed in these cases.

When determining whether to grant leave to amend, courts generally consider five factors, known as the *Foman* factors as stated by the Supreme Court in *Foman v. Davis*, 371 U.S. 178, 182 (1962). These factors include: (1) undue delay; (2) bad faith on the part of the party seeking leave to amend; (3) undue prejudice to the non-moving party; (4) futility of amendment; and (5) whether the plaintiff has previously amended the complaint. *Id.* "Dismissal of a complaint without leave to amend is proper where it is clear that the complaint could not be saved by amendment," i.e. amendment would be futile. *Cooper*, 704 F.3d at 783.

The Court finds Plaintiff should not be granted leave to amend her claims. Plaintiff has not previously amended the claims or engaged in undue delay in these two cases.

24

However, based on the record in these cases and the related cases, it appears Plaintiff may have been attempting obstruct the proceedings in the family law case and harass or be a nuisance to the Defendant attorneys and witnesses in the family law case because she was displeased with the outcome of the DVRO proceedings.  This Court would be enabling or extending that harassment and risk undue prejudice to these Defendants in having to file another round of motions to dismiss an amended pleading when Plaintiff did not even respond to their first set of motions.

However, the Court need not rely only on undue prejudice or bad faith, because any amendment would be futile.  The Court lacks subject-matter jurisdiction under *Rooker-Feldman* and that is not issue that could be cured under the circumstances of this case. Plaintiff's claims in both cases are challenges to state court decisions in her family law case.  That cannot be cured by amendment.  When claims are barred by *Rooker-Feldman* and there is no basis for finding the claims could be cured, dismissal without leave to amend is permissible.  *See Boudette*, 2024 WL 1342613, at * 2 (explaining that when "there is no basis to conclude [a plaintiff] could replead [their] claims to avoid the *Rooker-Feldman* jurisdictional bar, there is no prejudicial error in the district court's refusal to grant leave to amend.") (citing *Cervantes v. Countrywide Home Loans*, 656 F.3d 1034, 1041 (9th Cir. 2011)).

Even if the claims were not barred by *Rooker-Feldman*, Plaintiff's claims could still not be cured by amendment because the Defendants are either not state actors or entitled to judicial immunity.  "If judicial … immunity bar[s] recovery, no amendment could cure the deficiency and the action [is] properly terminated on a motion to dismiss."  *Ashelman*, 793 F.2d at 1075.  Similarly, Plaintiff's claims against all other Defendants are also futile because, as detailed above, they are all private actors.  Plaintiff's Complaints make clear that she was aware of this deficiency, she states they were private actors in the Complaints, and she attempted to overcome it by instructing the Court that they are state actors. However, as discussed above, allegations of a conspiracy are insufficient when the only conduct any Defendant allegedly engaged in was providing testimony or information in a

25

state court family law proceeding or being an attorney for a party in the family law case.[16]

Any amendment would be futile and allowing Plaintiff to amend would be unduly prejudicial to the Defendants.  Accordingly, the Court **DENIES** leave to amend.

### 4.   Other Motions Filed

Pro se Defendants Marie Martinette and Louis Martinette filed Motions to Dismiss based on improper service of the 1730 Complaint (1730 Case-Docs. 21–22) and supplemented those Motions (1730 Case-Docs. 41–42).  Given the Court's dismissal of the 1730 Complaint without leave to amend, the Court **DENIES** these Motions as **MOOT**. (1730 Case-Docs. 21–22, 41–42.)

Defendant Sherman's Anti-SLAPP Motion seeks to strike the 1730 Complaint pursuant to California Code of Civil Procedure Section 425.16.  (1730 Case-Doc. 26.) Given the Court's dismissal of the 1730 Complaint without leave to amend, the Court need not reach whether it should also be stricken as to Defendant Sherman under § 425.16. Accordingly, Defendant Sherman's Anti-SLAPP Motion is **DENIED as MOOT**.

---

[16] Defendant Yip's Motion to Dismiss the 1839 Complaint includes a request for sanctions under the Court's inherent powers based on Plaintiff filing these two cases (1730 Case and 1839 Case) and Case No. 3:23-cv-1854-RBM-VET against him under § 1983 despite Plaintiff admitting in the Complaints that he is a private individual.  (Doc. 24-1 at 20 (arguing Plaintiff has acted in bad faith by naming him as a Defendant despite acknowledging he is not a state actor).)  As discussed above, Plaintiff did acknowledge that the Non-Judicial Defendants were "private individual[s] and not … state official[s]."  (*See supra* II.B.2.b) (quoting 1730 Compl. at 53 (example of allegation as to numerous Defendants); *see also* 1839 Compl. at 32 (same allegation as to Defendant Yip).  However, as also detailed above, Plaintiff attempted to overcome the state actor requirement and Defendants being private individuals with allegations of a conspiracy among all the Defendants. (*See supra* II.B.2.b).)  While Plaintiff's state actor allegations against the Non-Judicial Defendants are, at best, insufficient legal conclusions that cannot be cured by amendment (*see id.*; *see also* II.B.3 (denial of leave to amend)), the Court is not persuaded that sanctions based on bad faith are warranted on this basis at this point.  Defendant Yip's request for sanctions under the Court's inherent powers based on Plaintiff's state actor allegations is **DENIED** without prejudice.

### III.   CONCLUSION

For the foregoing reasons and as set forth above, the Court **DISMISSES** the 1730 and 1839 Cases **WITHOUT LEAVE TO AMEND**.  The requests for judicial notice are **GRANTED in part** as set forth above (*see supra* I.B) and otherwise **DENIED.**

As set forth in detail above, the Court rules as follows in the 1730 Case:

- **GRANTS** Defendant Sachdev's Motion to Dismiss (Doc. 17);
- **GRANTS** Defendant Commissioner Boucek and Defendant Judge Smyth's Motion to Dismiss (Doc. 18);
- **GRANTS** Defendant Yip's Motion to Dismiss (Doc. 19);
- **DENIES as MOOT** Defendant Sherman's Motion to Strike (Doc. 26);
- **GRANTS** Defendant Willmore's Motion to Dismiss (Doc. 34);
- **GRANTS** Defendant Willmore's Motion to Strike 2nd Amended Complaint (Doc. 48);
- **GRANTS** Defendant Boucek and Defendant Smyth's Ex Parte Motion to Strike 2nd Amended Complaint (Doc. 49);
- **GRANTS** Defendant Sherman's Motion to Strike 2nd Amended Complaint (Doc. 50);
- **GRANTS** Defendant Yip's Ex Parte Motion to Strike 2nd Amended Complaint (Doc. 51);
- **GRANTS** Defendant Sachdev's Motion to Strike 2nd Amended Complaint (Doc. 54);
- **DENIES as MOOT** pro se Defendant Louis Martinette and Defendant Marie Martinette's motions to dismiss and supplements to motions to dismiss based on improper service (Docs. 21–22, 41–42);
- **DENIES as MOOT** Plaintiff's Request to Electronically File (Doc. 3).

For the foregoing reasons and as set forth in detail above, the Court rules as follows in the 1839 Case:

27

- **GRANTS** Defendant Sachdev's Motion to Dismiss (Doc. 22);

- **GRANTS** Defendant Commissioner Boucek and Defendant Judge Smyth's Motion to Dismiss (Doc. 23);

- **GRANTS** Defendant Yip's Motion to Dismiss and **DENIES** the request for sanctions (Doc. 24);

- **DENIES as MOOT** pro se Defendants' Motions to Dismiss (Docs. 14, 17);

- **DENIES as MOOT** Plaintiff's Motion to Set Aside Void Judgment (Doc. 3) and Request to Electronically File (Doc. 4).

The Clerk shall enter judgment dismissing the 1730 Case and 1839 Case without leave to amend and close the case.

**IT IS SO ORDERED.**

Dated:  May 14, 2024

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE